Good morning, Your Honors. May it please the Court, I'm Timothy Scott on behalf of the appellant, Mr. Asefi. Mr. Asefi was granted bond pending appeal and he is present with us here in the courtroom today. The first issue I'd like to address, Your Honors, is the RICO conspiracy that was alleged in Count 1 of the indictment. And specifically, whether there was a sufficient nexus to interstate commerce to justify the extension of federal power to this alleged offense. The proper test, the Supreme Court has told us in United States v. Lopez, is whether the regulated activity has a quote-unquote substantial effect on interstate commerce. I thought the proper test is that there only needs to be a de minimis effect on interstate commerce. And that the Congress is exercising its power to regulate activities which as a whole substantially affect interstate commerce. But that for a RICO case, you don't need to have an allegation or proof that the RICO conspiracy itself substantially affects interstate commerce. So tell me why I'm wrong. Well, for starters, Your Honor, the Supreme Court has never said a de minimis effect is sufficient in a RICO case. But let me try to take head-on Ninth Circuit cases that could be read to suggest the contrary. Like Fernandez. I'm sorry? Like Fernandez. Right. Fernandez started with juvenile mail. Juvenile mail, I think, is the patient zero in this thread of de minimis effect on interstate commerce. Juvenile mail, briefly, the facts were that the alleged enterprise was the Rolling 30s Crips, an alleged street gang, who evidently acquired firearms, presumably in interstate commerce, and then would also rob interstate or subway restaurants and other instrumentalities of commerce in order to get yet more firearms. The issue presented, what the appellants brought in the juvenile mail case, was the question of whether a de minimis or more than a de minimis impact was required for the individual predicate acts. Now, certainly in juvenile mail, the enterprise, the Rolling 30s Crips in that case, the enterprise, it could fairly be said, would have a substantial impact on interstate commerce. And if you grant that premise, then the individual acts, I would concede, would only need to require a de minimis impact. So when you have the enterprise that provides substantial effect, then the individual predicates require only a de minimis impact. Now, that's my argument of how we should read juvenile mail in order to harmonize that or to be faithful to the Lopez teaching. But I would acknowledge that there's some broader language than that in the juvenile mail decision. To the extent that we read juvenile mail to say that just because the RICO statute, or because the RICO statute purportedly is pointed at interstate activity, then both the enterprise and the individual acts need only have a de minimis impact. That, I think, is simply mistaken. And we should narrow or we should hold juvenile mail to its facts because that's contrary both to the RICO statute as well as to Lopez. Well, but, you know, I mean, isn't that something that if we ruled against you, I mean, isn't that something that might have to be directed to an embanked court or to the Supreme Court? Well, we certainly would if we needed to cross that bridge. But I think that this court could hold it to its facts or could hold it to the narrowest holding that one could read into juvenile mail, which is given the enterprise's activities that I think are beyond dispute involved interstate commerce, the individual predicates need only be de minimis. So I think it could be held to those parameters. I was starting to address the RICO statute. I think it's just erroneous for us to suggest that the RICO statute itself creates enough of a nexus that then the facts of the case only have to provide a de minimis nexus. What I mean by that is RICO by its own terms deals with enterprises that are either engaged in or that affect interstate commerce. Notably missing there is substantially affect interstate commerce. Now, if that was in the statute and a jury was properly instructed that that's what you have to find to convict, then I would agree that that is a valid jurisdictional hook and a meaningful element of the offense that would serve as some sort of buffer, some sort of limit to federal power. However, in this case you have simply affects interstate commerce is the jurisdictional hook without that substantial language. And then what makes that worse, and I think was borne out exactly in this case, is then on the facts of the case you have the jury instructed that the enterprise itself, here the superior court I suppose, need only have a de minimis impact and then the individual predicates need have no impact at all. And so that I think is quite far afield from the argument that RICO in itself, the way the statute is drafted, is some sort of a buffet on federal power. Did you object to those instructions on this ground? We certainly did. Clerk's Record 491 is our written objections to the jury instructions, and we included language saying that the jury should be instructed as to either engaged in interstate commerce under the proper test, what we argue is the proper test under the Robertson case, and then secondly substantially affects interstate commerce. But your Rule 29 motion did not address the adequacy of the proof on the jurisdictional issue, did it? Well, it did. We actually did incorporate by reference those comments. In ER 97, I had just gotten done arguing that there wasn't evidence of knowledge and so forth, and there was a colloquy with the district court where I said, Your Honor, I don't want the court to interpret my focusing on the knowledge prong as to the exclusion of our Commerce Clause arguments in the Rule 29. I just didn't want to continue to bang that drum after the court has ruled and the court said I accept that. So we did expressly incorporate our prior Commerce Clause litigation into that issue. Now, so even if we were to say that it is de minimis, if we're stuck with juvenile mail, so to speak, there still has to be a de minimis impact on interstate commerce, and that still has to carry some meaning in order for us to circumscribe federal law. Well, there were allegations in the indictment that the Superior Court had contracts with vendors outside the state of California. There were allegations in the indictment that there were federal program benefits received by the Superior Court. I don't think this was alleged, but obviously the people who had their convictions fixed were people who were driving vehicles which had been shipped in interstate commerce. I mean, it seems like given the Supreme Court's jurisprudence on minimal effects, that was more than satisfied both by what was alleged and what was proved. Well, I would beg to differ for this reason. The case law, as I understand it, requires not necessarily proving an actual concrete impact. I would certainly grant that. But there still has to be either a probable, the words are probable, or potential impact on interstate commerce. Not sort of in the abstract, but as applied to the actual facts of the case. Now, our argument is that if the government is leaning on a subscription to Westlaw, or a subscription to Microsoft Word, that combined with money that was received from the federal government for an entirely unrelated drug diversion program, that sort of speaks volumes, I would argue, in terms of the minimal impact and the less than de minimis impact that the offense had. I would argue that at a minimum, the enterprise plus the predicate acts have to show this de minimis impact defined as either probable or potential. And our argument is that simply doesn't get it done. So I don't know if I'm pronouncing this right, but how would you distinguish the Fraga case involving our finding that a RICO conspiracy to bribe state court officials that sufficiently affected interstate commerce? I think two answers as to Fraga. The first is that it is somewhat downstream from what I sort of cheekily described as patient zero with juvenile mail. So it didn't really dig into whether the enterprise plus the individual acts have to together substantially affect commerce. But even if we set that aside, there's still the issue of jury instructions. And I don't know that the Fraga opinion reveals what the jury instructions are. It may. I just honestly don't remember as I stand here. But what I do know is that in our case, the jury was specifically told the individual predicate acts need have no effect whatsoever on interstate commerce, not even de minimis, and the enterprise itself need only have a de minimis. And I think that that would be an extension beyond even the Fraga case. The next issue I wanted to address, Your Honors, had to do with the jury instructions. And I've already touched upon the jury instructions for the Commerce Clause. There were also other jury instructions that we took issue with. One was a jewel instruction or a deliberate ignorance instruction that, in our view, is an unprecedented extension of this deliberate ignorance doctrine to the very complex, and I use the word Byzantine, requirements that a RICO statute imposes on the government in terms of proving knowledge. The seminal jewel case, jewel itself, of course, was a fairly binary analysis of knowledge. Did the person know what was in the trunk or not know what was in the trunk in a border bust? And in that fact pattern, although the defense bar fought the good fight and lost, it makes sense that if you deliberately don't look in the trunk, then that can be a substitute for knowledge. But let's make no mistake, though, that this is constructive knowledge. It's something different than actual knowledge. It's knowledge light or a substitute, as I say, for knowledge. The problem with that here is twofold. First, the things that one has to know under the RICO statute go so far beyond that binary choice in a border bust case or in a simple drug case that it allows the government the opportunity to use jewel for easily a half dozen things that a defendant has to know in a RICO prosecution. Although we've approved jewel instructions in specific intent crimes before. There is the Ramos Atando case, I believe it is, which was a conspiracy case. I would argue, though, that that was fundamentally still a drug case. I mean, it was a boat that was being brought up the coast, and it was factually not unlike jewel. Did the person know that there was drugs in the boat or not know that there was drugs in the boat? Now, I can see that that does do violence to the argument that there should be a categorical bar of using jewel in a specific intent case. That's true. But I still say that that's a far cry from having a jewel instruction in a RICO case. In RICO, a defendant has to know the essential nature and scope of the alleged enterprise. They have to know that some person has something to do with the operation and management of the enterprise. They have to know what their common purpose and what their shared goal is, and on and on. They have to know that there will be at least two predicate acts and the general nature of those acts, either the ones that are alleged in the indictment or some other ones that the jury may find. What did the government have to prove as to knowledge in this case? I'm sorry, Your Honor? What did the government have to prove as to knowledge in this case? Each of those things. Specifically facts. The specific facts? Yeah. Well, it would have been then, I guess, as applied to the facts of the case, would have to know not just that the superior court was an enterprise, but the essential scope and nature of the illegality. And I think there's a difference of opinion there between the government and the defense. The government would argue that all you have to know is that the superior court, I suppose, exists, and that it's an enterprise and that it does superior court things. I don't think that's consistent with our case law. Well, I mean, but what the jury was instructed is that the government had to prove that the defendant joined the conspiracy, knowing of its objective to conduct, participate directly in the conduct of the affairs of the superior court through a pattern of racketeering activity and intending to join with at least one other person in that regard. Right. Right. So that's true. Those are things the government has to prove as to knowledge, in addition to the other elements that also include knowledge like the essential scope and nature of the enterprise, which, again, I would argue is the illegality, not just the existence of the superior court. I apologize, counsel. I want to go back to one thing. Yes, sir. You had talked about instructions with regard to interstate commerce. Yes. Where is that in the blue brief? The instructions on interstate commerce? Where is the argument you've made as to objecting, raising as an appeal issue, the instructions with regard to the interstate, the jury instructions with regard to the interstate commerce element? I see I've got three seconds, and because I don't have it on my fingertips, if the court would allow me to stand up and give that citation after the government has their argument, I'd be happy to do so. All right. All right. Thank you. Thank you, counsel. May it please the court, Vip Natal on behalf of the United States. Your Honors, I was going to address the two arguments that counsel has raised. I'm obviously available to answer any other arguments that the court has. But first, turning to the Commerce Clause challenge, as Judge Bennett recognized, I don't believe that the instruction as to the Commerce Clause was raised on appeal. I don't recall any citation in the briefs to that issue. I think what has been raised in the opening brief are two issues. One was the sufficiency of the allegations as to interstate commerce, as well as the sufficiency of the evidence. And I think there's essentially two cases that make this analysis foreclosed. First, and this was a case that I don't think was in detail addressed in the earlier argument, was the Supreme Court case in Robertson. So there's essentially two prongs, and the government provided evidence, as well as alleged, both that the Superior Court was engaged in commerce, as well as that it had a diminished impact on interstate commerce. And Robertson is squarely on point. It's a RICO case, and in that case, like our enterprise here, there was an entity, a legal entity that was engaging in interstate commerce. And that's what we proved at trial and alleged in the indictment. But also going further and looking at the effects prong of the 1962 statute, Friega has foreclosed this, and Friega was kind of, I think we decided in 1990. So this is an issue that's been largely resolved. Friega was almost a very similar case. The only difference being that in that case, the corrupt actor was judges, and in this case, it was a clerk. And the findings there should foreclose any challenge that's raised now related to the Commerce Clause. I'd like to turn to the deliberate ignorance instruction argument that was presented. I think as a general matter, it's important to kind of back up and take a view of what Selina said. Selina's was clear that RICO conspiracies are not some special conspiracy. I think what the Supreme Court told us was essentially to treat RICO conspiracies like any other conspiracy, and the law that applied to it should apply the same. The general principle should apply. And this Court's holding in Ramos-Sotondo and Nicholson also foreclosed, as a general matter, challenges to deliberate ignorance instructions in criminal conspiracies. I think it's clear there's no debate. The issue at trial was whether the defendant actually believed an attorney was legitimately resolving cases or was there a corrupt employee behind it. And that was the only issue with respect to the RICO conspiracy. And I'd submit our primary argument was not the deliberate ignorance. Our primary argument was that the defendant had actual knowledge. There was ample evidence for the jury to find that. And we'd submit that the jury did find that because it convicted on count two the 666 charge where there was no deliberate ignorance instruction given. So the jury necessarily found that the defendant corruptly gave bribe proceeds to a middleman that was supposed to go to the court clerk. Counsel, I think you said in your brief that two circuits, two other circuits, which have explicitly looked at, I guess, ostrich instructions in RICO cases, the Fifth and Seventh Circuit, have sanctioned them. Are you aware of any cases that go the other way? No, Your Honor. And I would submit that when looking at this language, I think counsel raises at various points in his argument about the essential nature and scope of the enterprise. I think there is some confusion in the law about what that reference is to. We would submit that reference comes up in the Ninth Circuit case when you're evaluating sufficiency of the evidence. It's from Bommer, Howard, as well as Fernandez, all use that language when they're evaluating the sufficiency of the evidence at trial or the sufficiency of the claim for the civil RICO cases. But taking a step back and looking at that language, it comes from the Seventh Circuit in two different decisions where the question is whether there was sufficient evidence of unknowingly joining the criminal conspiracy. And, again, that language is not particular to RICO enterprises. It's talking about the criminal enterprise or joining the criminal conspiracy. In looking at the deliberate ignorance instruction specifically, we would submit Ramos-Otondo and Nicholson support the government's position. In Ramos-Otondo, the claim was that perhaps illegal aliens were aboard a panga boat and not marijuana as charged. And the government asked for instruction about deliberate ignorance, about the drugs being on the boat. In Nicholson, similarly, there was a claim that the defendant thought the venture was legitimate and not related to drug trafficking. In both cases, the court held that there was no error and that deliberate ignorance instruction was appropriate. That's exactly what we had here. We had a claim from the defendant that he believed it was a legitimate transaction when he was taking funds, but, in fact, there was a corrupt employee behind it. And that's what the instruction addressed. In any event, the reading of the instruction makes it clear that there was no prejudice because that defense was still able to be raised. At the end of the instruction, it stated that if a jury found and actually believed that the defendant actually believed that an attorney was behind it and not a corrupt court employee, then the jury could not find he had actual knowledge. Given that, the government would submit that there was no error in using the deliberate ignorance instruction on these facts, given the circuit's law. I see I have extra time. I would submit unless the court has any questions regarding the other issues, the government is raised. What is your argument on the claim that the immigration charges were misjoined with the other charges? Your Honor, looking at the Rule 8 analysis, so there was six false statements that were alleged in Count 4, two related to the bribery scheme, and four related to a prior 2011 case. We only look at the face of the indictment for that analysis. Under the Rule 8 analysis, we'd submit that because the proof was overlapping and it was clear from the indictment it would be, because it was part of the same scheme, they were properly joined. How is the immigration application part of the same scheme as the bribery and conspiracy? The actual false statement may not be part of the same scheme, but the proof of the false statement, so here the false statements were, one, that he committed a violation of state law when he paid a bribe for his own ticket, and he falsely stated in the immigration application that he had never committed a crime. So to prove that false statement, we would necessarily have to prove up the entire bribery scheme. The second false statement was related to the September 2015 interview with the FBI, where he also provided false statements. And there was a false statement in the naturalization application related to that statement. So to prove up the false statements in the naturalization application, we would have to prove up the entire scheme. He was acquitted of the count dealing with the FBI, correct? Yes, Your Honor. And I think it's clear from the record that the prejudicial severance motion was waived. It was never raised after the pretrial hearings, and with good reason. The court requires a defendant to raise that again to allow the district court to do some sort of weighing and evaluating the evidence as it comes in. But even if there was a misjoinder here, we would submit there's no actual prejudice here. The district court instructed the jury to treat each count separately, and, in fact, in this case, as Judge Bennett recognized, the jury did acquit, which suggests that the jury was able to distinguish between the counts and weigh the evidence appropriately. If there's no further questions from the court, I would submit and ask the court to affirm the conviction of that issue. All right. Thank you, counsel. I'll give you a couple more minutes. I did want to provide a square answer to Zahner's question. The short answer is that we did not raise the Commerce Clause instructions as a stand-alone assignment of error. The slightly longer answer is that we did describe it in the procedural posture of the case at page 13 of the AOB, of the blue brief. But I also think that there's two ways in which the court could consider the failure to give the instruction that we requested. The first is simply as a rebuttal to the argument that the RICO statute in itself serves to provide a meaningful jurisdictional limit on court's power, because then if we look to the particulars of the jury instruction that was given, I think that's simply a rebuttal to that argument. But then also, more concretely, we also raised cumulative error at the end of our brief, which, of course, includes both errors raised in the brief and those not raised in the brief. So I think in either of those contexts, that's something that the court could consider. I would be happy to answer any other questions. Otherwise, I believe I'm out of time. All right. Thank you very much, counsel. Thank you, Your Honors. U.S. v. Mississippi will be submitted.
judges: Wardlaw, Bennett, Miller